**ROBERT C. BOWERS, JR., v. ALACHUA COUNTY, et al.**

8 So. (2nd) 395                                        En Banc
May 14, 1942

Jennings & Coffee, and J. H. Schad, for appellant.

Adkins & Arnow, W. H. Poe, and Zach H. Douglas, for appellee.

BUFORD, J.:

On appeal we review a decree of the Circuit Court of Alachua County, Florida, validating the negotiable coupon bonds of Alachua County, Florida, in the sum of $100,000.00.

The final decree is as follows

"This cause came on to be heard at chambers in the Court house in Gainesville, Florida, on the petition of Alachua County, Florida, a political subdivision of the State of Florida, and the separate and several answers of the State of Florida by its State Attorney of the Judicial Circuit wherein is located Alachua County, of M. A. Spruill, W. L. Coates, E. M. Deaton, G. O. Hunt and E. J. Kennedy, and of Robert C. Bowers, Jr., as intervenors, and as citizens and taxpayers of said Alachua County, pursuant to an order heretofore issued by this Court against the State of Florida, and a notice given and published by the Clerk of said County as provided by law, requiring the State of Florida, through its State Attorney for the Eighth Judicial Circuit, and all citizens and taxpayers of Alachua County, Florida, to show cause, if any they have, why certain bonds described in the petition should not be validated and confirmed, as prayed therein, and the Court now having considered the petition and all proceedings had in this cause, and the evidence adduced by the respective parties before the Court, and the Court having considered and determined all of the questions of law and of fact in the cause, and the arguments of counsel for petitioner, the

State of Florida, and the several intervenors, and being now fully advised in the premises, finds the facts as follows:

"A. That a copy of the petition in this cause and of the order of this Court issued on the 9th day of April, 1942, against the State of Florida, requiring it, through the State Attorney for the Eighth Judicial Circuit of said State, to show cause before this Court on the 30th day of April, 1942, at 11:00 o'clock A.M., why said bonds should not be validated and confirmed by decree of this Court as prayed in said petition, were duly served upon said State Attorney on the 9th day of April, 1942, said date being at least eighteen days before the date of hearing fixed in and by said order.

"B. That after filing of the petition and the issuance of said order the Clerk of this Court caused to be published in the Gainesville Sun, a newspaper published in Alachua County, Florida, and duly qualified by law to publish any and all official and judicial notices, in the issues of said newspaper published respectively on April 9, 16 and 23, 1942, a notice addressed to the taxpayers and citizens of Alachua County, Florida, requiring them at the time and place specified in said order for the hearing of this cause to show cause, if any they had, why said bonds should not be validated and confirmed, and that said notice was published once each week for at least three weeks before said hearing, the first publication being at least eighteen days before said hearing.

"C. The State of Florida, through its said State Attorney has filed its answer to said petition, presenting objections of law and fact to the validation of said bonds.

"D. The aforesaid M. A. Spruill, W. L. Coates, E. M. Deaton, G. O. Hunt and E. J. Kennedy, and the said Robert C. Bowers, Jr., citizens and taxpayers of Alachua County, Florida, have severally filed their answers, presenting their respective objections of law and fact to the validation of said bonds. The said intervenors, at the hearing, specifically abandoned their objection that Chapter 21097, Acts of 1941, was unconstitutional and void.

"E. That the statements of facts set forth in the petition herein are true.

"F. That the Board of County Commissioners of Alachua County, Florida, duly and regularly resolved to issue the bonds described in the petition and duly called an election of the freeholders of said county qualified to vote at said election on the question of issuing said bonds, and fixed the date thereof.

"G. That the said Board gave notices, respectively, of said election and of the opening of the registration books of said county for the registration of voters qualified to vote in said election, in the aforesaid legally qualified Gainesville Sun, in the form, manner and for the length of time required by law.

"H. That the said election was duly held in the various voting places in Alachua County canvassed by the proper officers, and the results thereof were duly certified as required by law, and said election was, in all respects, legal and regular.

"I. That the Board of County Commissioners of said county duly met and determined that a majority of the qualified electors voting at said election had voted in favor of said bonds, and by proper and sufficient resolution, entered said finding in their official minutes.

"J. That the Board of County Commissioners of Alachua County, Florida, duly determined that a majority of the electors qualified by law to vote in said election participated therein.

"K. That the Board of County Commissioners duly met and passed resolutions fixing the amount, denominations, interest rate, maturities and the form of the bonds proposed to be issued, levied a sufficient tax to pay the principal of, and interest on, said bonds, and provided for the sale and delivery thereof, and all other details necessary to the issuance of said bonds.

"L. That all of the acts and resolutions of the Board of County Commissioners, and other officers of Alachua County, Florida, affecting the issuance and validity of said bonds, the calling and holding of the election aforesaid, the canvassing and the determination of the result thereof, and the findings of the Board of County Commissioners aforesaid, were each and every of them regular, valid and in conformity with the requirements of law, and the respondent and intervenors have failed to present any matters of fact or law sufficient to overcome or impair the findings and determination of the Board of County Commissioners of Alachua County, Florida, that a majority of the qualified electors voting at an election in which a majority of the freeholders qualified to vote participated, voted in favor of said bond issue, and that said election was legal and regular and each and every of said acts, resolutions and findings should be approved, ratified, confirmed and validated.

As conclusion of law from the foregoing facts, the Court finds:

1. That this Court has jurisdiction of the subject matter of this cause, and of the parties hereto, includ-

ing all of the citizens and taxpayers of Alachua County, Florida; and that Chapter 21097, Acts of 1941, is a constitutional, valid and subsisting law.

2. That the bonds described in the petition are duly authorized by Chapter 21097, Acts of Florida, 1941, and have been provided for in strict conformity to the requirements of said statute.

3. That the taxes to pay the principal of, and interest on, said bonds are required to be levied, assessed and collected at the same time and in the same manner as taxes are levied, assessed and collected for current operating and governmental expenses of said Alachua County, and that such taxes, when levied, shall be collectable and payable in cash only and may not lawfully be paid in bonds or interest coupons.

4. That the said bonds, authorized by and described in, the several resolutions of the Board of County Commissioners of said Alachua County, certified copies of which are annexed to the petition herein, have been propertly authorized and will constitute negotiable instruments, and all matters, things, proceedings and conditions to happen, be done, exist and be performed precedent to and in the issuance of said bonds have happened, been done, exist and have been performed in due time, form and manner according to law, and that no cause has been shown why said bonds should not be validated and confirmed.

It Is Therefore Considered, Ordered Adjudged and Decreed that the said bonds be, and the same are hereby validated and confirmed, said bonds being more particularly described as 'Negotiable coupon bonds of Alachua County, Florida, in the aggregate amount of $100,000, consisting of 100 bonds of the denomination of $1,000 each, numbered 1 to 100, inclusive, dated

May 15th, 1942, bearing interest at the rate of four (4) per centum per annum, interest payable semiannually on the 15th days of May and November of each year and maturing annually on May 15th, in numerical order, lowest numbers first, as follows:

'$5,000 each year in the years of 1947 and 1948; $6,000 each year in the years of 1949 and 1960, both inclusive; and $9,000 each year in the years 1961 and 1962. Both principal and interest shall be payable at the Chemical Bank & Trust Company, in the City of New York, N. Y., in any coin or currency which on the respective dates of payment of the same is legal tender for the payment of public and private debts.'

It Is Further Considered, Ordered, Adjudged and Decreed that the Clerk of this Court be, and he is hereby, ordered and directed to endorse upon each and any of said bonds his certificate that the same has been validated by the decree of this Court, in the form and manner required by law, upon the demand of the Board of County Commissioners of Alachua County, Florida, or any holder of such bond or bonds."

We have quoted the decree in full because it shows the issues as they were presented, the contentions of the parties and the disposition by the Court.

Appellants have presented two questions for our consideration, as follows:

"May the County Supervisor of Registration, acting either alone or in conjunction with the Board of County Commissioners at a time subsequent to the holding of a special bond election, strike or delete from the list of freeholders otherwise qualified to vote, as evidenced by the lawful lists furnished to the Clerks and Inspectors of the several election precincts by the Supervisor of Registration for the purpose of holding

an election, a sufficient number of names of persons, alleged to be disqualified, so as to make it appear that a majority of the freeholders otherwise qualified to vote did participate in said election notwithstanding the fact that the number of persons voting in said election when taken in connection with the number of freeholders otherwise qualified as shown by the lists furnished to the Clerks and Inspectors of the several precincts for the holding of said election, shows that such majority did not participate, the striking and deletion of said names being, as aforesaid, at a time subsequent to the holding of said election and without notice to the persons whose names were so stricken and deleted? And may the County Commissioners, as the governing authority, then find from the said list after names of persons have been stricken and deleted as aforesaid, subsequent to the date of the holding of said election, that the persons whose names appear thereon constitute the true list and number of free-holders otherwise qualified to participate in an election held twenty days prior to the time of such finding and determination, and find that a majority of the free-holders otherwise qualified to vote did participate in said election?"

Let it be observed that there is no proof offered that the determination or finding of the County Commissioners made on February 23, 1942 and before the canvass of the votes of the bond election to the effect that there were only 3987 freeholders otherwise qualified to vote in said election at the time the said election was held, was false, fraudulent or untrue.

Section 6, Article IX of our Constitution provides:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling

invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts or municipalities shall participate, . . . "

It is admitted and must be determined and adjudged that if there were only 3987 freeholders in the county otherwise qualified to vote and if 2050 of such freeholders otherwise qualified to vote participated in the election, then a majority of those so qualified to vote did participate in the election, and that in this regard the requirements of Sec. 6, Article IX were complied with.

It is, in effect, the contention of the appellants that the Board of County Commissioners were forever bound by the lists as prepared by the Supervisor of Registration and sent out with the ballot boxes and that although they should find those lists to be erroneous or false, the Board must nevertheless make its findings in this regard based on that list. We cannot subscribe to this.

Such holding would open the door to fraud and make truth powerless to prevail over falsehood. If that rule should be sanctioned then a designing Board vested with the power like that here vested in the Board of County Commissioners could fraudulently have a list prepared showing only half of the qualified voters, publish the list and reinstate the paltry few who might observe the publication and then send out to the precincts lists containing less than three-fourths of the freeholders otherwise qualified to vote and, when a majority of that less than three-fourths of the

qualified voters had participated in the election, the courts would be required to hold the election valid and effective, though it should be entirely apparent that less that a majority of the freeholders otherwise qualified to vote in such election had participated in it.

We do not think that the Board of County Commissioners or any other official Board will ever be required by the courts of this state to render findings on evidence which they find to be erroneous and untrue.

Section 17 of Chapter 14715, Acts of 1931, is as follows:

"Whenever any election shall be called and held under the provisions of this Act and the votes cast thereat returned, tallied and canvassed, it shall be the duty of the County Commisisoners in the case of a County or District election, or the governing authorities of a Municipality in the case of a municipal election, *to make and enter in their minutes a finding as to the total number of qualified electors residing in such county,* District or Municipality as the case may be, *as were legally qualified to participate in the election and also a separate finding as to the total number of votes cast in said election in favor of the approval of bonds and the total number of votes cast in said election against the approval of bonds* and a duly qualified certificate copy of such finding shall be admissible as evidence in all the courts of the State and shall be deemed prima facie evidence of the truth of the facts recited and shown, thereby including the regularity of the call, conduct and holding of such election at the time and place specified." (emphasis supplied)

It is to be noted that the County Commissioners by this Section are required to make and enter in their

minutes a finding of fact. If the finding of the Board of County Commissioners in the matter here under consideration was false, fraudulent or untrue, the doors of the courts were open to make them act honestly and speak the truth with findings according to fact, but here no such contention is presented.

As we construe the statute, supra, it imposed the duty on the Board of County Commissioners to determine and make a finding of fact reflecting the truth as to the actual number of freeholders otherwise qualified to vote in the election. We repeat, there is no allegation that the finding is false, but only that the Board was without power to inquire and find the truth.

The statute, supra, provides that a certified copy of the findings of the Board of County Commissioners as entered upon their minutes shall be admissible in evidence in the courts of this state and shall be prima facie evidence of the truth of the facts recited and therein shown.

We further observe that there is not involved in this case any question of the count or the canvass of the vote nor as to the legality or illegality of any vote cast.

We have considered the authorities cited by counsel but find no case in factual point which we deem controlling under our Constitution and statutes. Therefore, we have herein construed our constitutional provisions and the statutes in paria materia.

Finding no reversible error, the decree is affirmed. So ordered.

BROWN, C. J., WHITFIELD, THOMAS and ADAMS, JJ., concur.

TERRELL and CHAPMAN, JJ., not participating.