SPECIAL TAX SCHOOL DISTRICT NO. 3, DADE COUNTY FLORIDA, and THE BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, FLORIDA, v. THE STATE OF FLORIDA and L. E. EDWARDS, et al.

14 So. (2nd) 405                                   June Term, 1943
July 9, 1943                                              En Banc

*John J. Lindsey,* for appellants.

*G. A. Worley,* for Appellee, State of Florida, and *J. M. Flowers* for Appellees L. E. Edwards, et al., appellees.

CHAPMAN, J.:

Special Tax School District No. 3 of Dade County and the Board of Public Instruction of said County presented a joint petition to the Circuit Court of Dade County, Florida, for an order validating school bonds of the aforesaid District in the sum of $875,000.00. The moneys obtained from the sale of the bonds were to be used by the Boards as provided for by law in purchasing building sites, the construction of school plants, repairs, alterations, renovations of school property, and the acquisition and installation of heating plants for old and new school buildings, and it is contemplated that all of said money will be expended as aforesaid, in Special Tax School District No. 3 of Dade County, Florida.

The petition had attached thereto, and by appropriate reference made a part thereof, pertinent documents viz: (a) resolution adopted by the Trustees of Special Tax School District No. 3 making recommendations to the County Board of Public Instruction for maintenance of the public school sys-

tem of said District; (b) resolution adopted by the Board of Public Instruction of Dade County accepting the recommendations of the Trustees of the District and certain findings and declarations of fact establishing the necessity for the contemplated improvements, the holding of an election and the issuance of the bonds; (c) proof of publication of the resolution and notice of election; (d) form of ballot to be used by the freeholders in the proposed election; (e) certificates of canvass of the returns by the Board of County Commissioners and the Board of Public Instruction; (f) resolution of the Board of Public Instruction providing for the issuance of the bonds; (g) other Exhibits unnecessary to recite but by appropriate reference made a part of the petition.

It has been made to appear by the petition for validation that the bond election was conducted and held on the same date as the State and County Primary election, viz: May 5, 1942. The right or privilege to vote in the school bond election was restricted by those conducting the election to qualified electors who were freeholders and residing in Special Tax School District No. 3 of Dade County. The bond election was held separate and apart from the primary election, and the form of ballots employed was distinctly different, and the voting machine was employed by the voters. Identification slips of paper possessing different colors requiring the signature of the voters and surrender thereof were employed by those in control of or managing the election. When a qualified elector wishing to participate in the State and County Primary election presented himself, he was given a white slip of paper printed with black ink and he was required to sign the paper and surrender it at the time of voting. When a qualified elector and freeholder residing in Special Tax School District No. 3 presented himself at the polls, he was given a slip of pink paper printed in black ink, which he was required to sign and surrender to those in control of the election after voting.

The election certificates, required to be issued after a canvass of the votes, by the Board of County Commissioners and the Board of Public Instruction of Dade County declaring the result of the school bond election of Special Tax School

District No. 3 discloses that the actual number of votes cast in favor of and against the issuance of school bonds in the aggregate failed to constitute a majority of the qualified electors who are freeholders residing in Special Tax School District No. 3 of Dade County and entitled to vote. The Supervisor of Registration list of Dade County discloses 9,439 qualified voters of said Special Tax School District on May 5, 1942, and that 3,640 votes were cast in favor of the issuance of school bonds, while 749 votes were cast against the issuance therefor.

It is shown that 5,548 qualified electors who were freeholders and residing in the aforesaid school district, presented themselves at the several polling precincts of the district on May 5, 1942, the election day. It is admitted that each of the aforesaid qualified electors while at the polls received from the managers a pink colored identification slip of paper; that each of the electors signed the pink slip and surrendered it to the managers while at the polls but otherwise failed or omitted to cast their ballots when at the several polling precincts for or against the issuance of bonds by the school district. It is contended that the votes of the 5,548 qualified electors should be included among those "actually participating in the election," although each failed to cast their respective votes for or against the issuance of bonds by the School District.

The well pleaded facts set out in the petition were by counsel admitted to be true on a hearing before the lower court for the purpose of a ruling on a demurrer directed to the several allegations of the petition. It was the view and holding of the lower court that to "participate in an election" provided for by Section 6 of Article IX of the Constitution meant nothing short of "actual voting." An appeal therefrom has been perfected here.

Section 6 of Article IX of the Florida Constitution was adopted by the people in the General Election held November 4, 1930, and provisions thereof on numerous occasions have since been considered and ruled upon by this Court. The case of State ex rel. Linebaugh v. City of Tampa, 137 Fla. 29, 187 So. 604, involved the power of the City of Tampa to issue

bonds as a result of an election participated in by an *alleged* majority of the freeholders who were qualified electors residing within the said city.. It was shown that the city had 6,375 qualified electors on September 27, 1938, when 1,846 voted in favor of issuing the bonds and 1,215 voted against issuing the bonds, and 177 went to the voting precincts on election day, received ballots, entered the voting machines but failed to make their desires known whether for or against the issuance of the bonds. Three members of the Court held that the 177 electors participated in the election, while the other three members expressed a contrary view.

The case of State v. Dade County, 144 Fla. 448, 198 So. 102, involved the question of "participating" in an election as contemplated by Section 6 of Article IX of the Florida Constitution, when we held that the issuance of bonds was authorized only after their approval by a majority of the votes cast in an election in which a majority of the freeholders who are qualified participate. The constitutional requirement to "participate" meant nothing short of actual voting, as held in the lower court.

On this appeal we are requested to adopt and apply the rule enunciated by the Supreme Court of North Dakota as expressed in the case of State ex rel. McCue v. Blaisdell, 18 N.D. 31, 119 N.W. 360, to the effect that if an elector enters a booth and votes for some candidates and not for others, or votes for all candidates but fails to express his choice on a question submitted, he thereby delegates to those who do vote his right as an elector and acquiesces in the result, be it one way or the other, and is thereby held to have participated in the election.

Our answer to this contention is: (1) that this Court in the case of State v. Dade County, *supra,* has placed on the word "participate" appearing in Section 6 of Article IX a construction contrary to this contention; (2) the evil sought to be remedied by the electors in the adoption of Section 6, Article IX, was the wild, indiscriminate and promiscuous issuance of bonds without an approval by the freeholders; (3) the courts are bound by the plain mandates of the people as expressed in Section 6 of Article IX of the Constitution.

Section 6 of Article IX, *supra,* provides that designated political units of Florida shall have the power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such (designated) district shall participate. . . . Can we conclude that the receipt of a paper slip by an elector, the signing of the same by him, and the surrender thereof to the manager of the election mean to "cast a vote" and to participate in an election? Voting usually is the formal expression of opinion or choice, either upon some question submitted for decision or upon the election of officers or representatives.

A secret vote is designated to obtain an expression of the views of the free and independent electors. The privilege of casting a vote is generally recognized by the people of democratic countries as an act of sovereignty. The will or intention of any voter should not be determined by a guess or gamble or by caprice or arbitrariness on the part of any group or even by the signing and surrendering of pink colored paper slips, as shown by the record. Certainly the electorate of Florida, in November, 1931, by adopting the amendment, intended to forever dispense with the wild cat scheme of bond issuance then prevalent by insisting that bonds should issue only after approval by a majority of the votes cast and required further that a majority of the freeholders should participate in the election.

The record has been carefully considered. Splendid briefs have been filed in the case and able oral argument of counsel has been heard at the bar of this Court. We fail to find error in the record and accordingly the order appealed from which sustained a demurrer to and dismissed the petition for validation is hereby affirmed.

BUFORD, C. J., TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.