**PORT OF PALM BEACH DISTRICT, et al., v. THE STATE OF FLORIDA, et al.**

22 So. (2nd) 581
June 22, 1945
Rehearing denied July 11, 1945

June Term, 1945
En Banc

*Earnest, Lewis & Smith, John D. McCall* (Dallas, Texas) *Clarence E. Crowe* (Dallas, Texas) and *Millard Parkhurst* (Dallas, Texas) for appellants.

*Allen, Drew, Burns & Middleton* and *Sidney J. Catts, Jr.,* for appellees.

THOMAS, J.:

By Section 6 of Article IX of the Constitution as amended November 4, 1930 counties, districts, and municipalities were empowered to issue bonds only when approved "by a *majority of the votes. cast* in an election in which a *majority of the freeholders* who are qualified electors residing in such counties, districts, or municipalities *shall participate,* to be held in the manner prescribed by law. . . ." (Italics furnished.)

The appellants sought to issue bonds, and to that end an election was held at which 2740 voters approved, and 2636 disapproved, the proposal; 397 ballots were "spoiled." Some votes were "not accounted for," but they seem to bear no importance, so they will not be further mentioned. Counsel for the respective parties are at variance upon the approach to the prime point involved, namely whether a majority of "votes cast" did or did not sanction the indebtedness. The appellants contend that inasmuch as the total of votes cast for and against the bonds was greater than one-half the number of eligible voters the constitutional prerequisite in that respect was obeyed, regardless of the "sufficiency of the participation," while appellees insist that we must, in order to pass upon the adequacy of the ballots favoring the

issue, determine "whether those who cast the spoiled ballots participated in the election."

We have been referred to Sections 103.01 et seq., Florida Statutes, 1941, and F.S.A., enacted by the Legislature, pursuant to the adoption of the amendment, for the purpose of effectuating the original provision that the "manner" of holding the election should be prescribed by statute.

It does not seem to us, however, that there is need to resort to these statutes or to analyze them in order to decide the present controversy. There is no direct challenge to the way the election was conducted or, to use the language of the amendment, the "manner" in which it was "held," but rather to the sufficiency of the participation and of the approving votes. Either of these could be determined by the phraseology of the amendment itself. One of them, the "participation" by the majority of those qualified to take part, is a prerequisite to a legal election, and of course the result would be of no consequence whatever, even if the ballots indicated a unanimous choice, if in fact fewer than one-half those qualified actually took part. Although it is conceivable that a case might arise where it would be necessary to decide whether persons spoiling their ballots participated, no such consideration is required here for the simple reason that the sum of ballots clearly indicating the voters' choice is more than half the number of eligible voters in the district. It is perfectly clear that a majority participated; so the void ballots need not be considered with reference to this feature of the case.

The crucial phase of the litigation, and one in which the defective ballots must be evaluated, involves the outcome of the election, and, as we have said, the conclusion will be based on the meaning of the amendment. The question may be simply stated: Were the proposed bonds "approved by the majority of the votes cast?" The answer must depend on the status of the spoiled ballots, as an allusion to the figures given at the outset will show, for if they be classified as "votes cast" then the 2740 ballots approving the bonds were fewer than one-half the total of those votes, the ones against, and the ones invalid, or 5773.

It seems to us that a vote is cast when a ballot is deposited indicating a choice. Certainly the very purpose of the vote is to express the intention of the voter upon some matter under discussion, to approve or disapprove, accept or reject a proposal. Oxford English Dictionary. Another appropriate definition of the word "vote" is: "formal expression of a wish, will, or choice in regard to any measure proposed." The word "cast" means "deposit (a ballot) formally or officially; give (a vote)." Webster's New International Dictionary, Second Edition. This Court has said: "Voting usually is the formal expression of opinion or choice, either upon some question submitted for decision or upon the election of officers or representatives." Special Tax School District No. 3, Dade County, et al., v. The State of Florida, et al., 153 Fla. 292, 14 So. (2nd) 405.

We think "votes cast" at an election are choices expressed at that election. There is abundant authority to the effect that ballots registering no preference should be disregarded in determining the result of an election. There were but two choices in the election here. If we were to hold that the bonds must be approved by a majority of the total of the ballots indicating a choice and those indicating none, it would be the equivalent of deciding that the latter, not having indicated approval, should be considered as showing disapproval. It would be necessary to say, at once, that the spoiled ballots should be counted as exhibiting disapproval, yet were in such condition that it could not be determined whether they indicated approval *or* disapproval.

We think, a majority of the qualified electors having participated, irrespective of the number of deficient ballots, and a majority of the positive choices having been expressed in favor of the bonds, they should have been validated. In simple words, we would define a "vote cast" as the exercise on a ballot of the choice of the voter on the measure proposed.

The appellants posed two questions, one of which is so closely akin to that just decided as not to require separate comment. Before we discuss the other, and last, question it might not be amiss to give the basis of the chancellor's ruling that the bonds were not valid.

We have written so far about bonds called "Improvement Bonds," which could be valid only if authorized by election. In the same suit appellants sought validation of certain refunding bonds.

The chancellor premised that the "expressions 'participate' and 'votes cast,'" as used in the Constitution, had "the same meaning" and that "those who cast spoiled ballots must be counted as 'participating' in the election. State v. City of Tampa, 137 Fla. 29, 187 So. 604; State v. Miami Beach, 154 Fla. 748, 18 So. (2nd) 785." He then turned to the statute, Section 103.12, Florida Statutes, 1941, and F.S.A., for the language which would declare the vote essential to authorization of the bonds.

As we have observed, we have the view that the points here presented are determinable from the language of the Constitution itself without the aid of the statute enacted to prescribe the *manner* of holding the election.

At the risk of being tiresome we repeat the provision of the amendment that bonds may be issued "only after . . . approved by a majority of the votes cast in an election in which a majority of the [qualified] freeholders . . . shall participate . . ." that it may be compared with the portion of the above Act quoted by the chancellor: "In the event . . . a majority of those participating shall not vote in favor of . . . the . . . bonds, then the issuance . . . shall be deemed to have failed of approval" etc. To the casual reader there is small dissimilarity, but when they are read in the light of the facts of this case we see a marked distinction, and we believe the former controls.

The chancellor based on premise on the two cited cases. The first may not be considered as authority for the reason that the members of the court were equally divided. Appellees in their brief concede that that decision is not authority, for they say, "It is true, of course, that at the time the decision was rendered the result was not . . . determinative of the construction of the word 'participate.' This was so because of the fact that the Court was divided." In the opinion in the second case there is no mention of a spoiled ballot,

104

and the facts were otherwise entirely different from the ones with which we are dealing.

When he had reached his conclusion that the improvement bonds were invalid the chancellor observed that "the sole reason for issuing the refunding bonds" being the "change in the debt structure . . . from the issuance of the . . . improvement bonds" and the latter having "failed of approval" the former were likewise unauthorized.

Being convinced that the improvement bonds should have been confirmed, we reverse the decree with directions to validate both issues.

Reversed.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, ADAMS and SEBRING, JJ., concur.

