## STATE OF FLORIDA v. CITY OF MIAMI BEACH

23 Só. (2nd) 720                                      June Term, 1945
November 16, 1945                                      En Banc
Rehearing denied December 6, 1945

*Glenn .C. Mincer,* State Attorney, and *H. Frost Bailey,* Assistant State Attorney, for appellant.

*Ben Shepard,* for appellee.

THOMAS, J.:

The circuit judge validated bonds of the City of Miami Beach in four series designated respectively as " 'auditorium bonds,'." " 'hospital bonds,' " " 'Ocean Front Park Bonds,' " and " 'Parking Area Bonds,' " and State of Florida appealed.

Decision of the controversy hinges on the sufficiency of participation by qualified voters in an election at which there were presented severally the questions whether each issue should be approved "by a majority of the votes cast," Section 6, Article IX of the Florida Constitution. Of course for the election to have been effectual under this organic law a majority of the freeholders who were qualified electors residing in the municipality must have taken part. Of these there were 3722; so the election was valid if 1862 of them participated.

The problem here seems relatively simple, but is vastly complicated by the fact that there were submitted to the electors at the same time and on the same ballot two other propositions—i. e., the purchase of a gas works and the levy of millage for advertising. There were 15 absentee ballots, and 1926 voters actually entered the voting booths to vote for one or more of the six questions presented.

Each bond issue received more votes of approval than of disapproval, yet the total votes cast "for" and "against" none of them reached 1862, the minimum participants required. In the first, 1820 votes were counted; the second, 1803; the third, 1790; the fourth 1769.

The parties litigant cite us the same decisions, four in number, rendered by this court in similar, but not identical, disputes. They are: State et al. v. City of Tampa, 137 Fla.

29, 187 So. 604; State v. Dade County, 144 Fla. 448, 198 So. 102; Special Tax School Dist. No. 3, Dade County, et al., v. State et al., 153 Fla. 292, 14 So. (2nd) 405; and State v. City of Miami Beach, 154 Fla. 748, 18 So. (2nd) 785. The first of these may be eliminated from consideration because the members of the court were evenly divided and the decision therefore possessed no force as judical precedent (State ex rel. Hampton v. McClung, 47 Fla. 224, 37 So. 51). Upon the remaining three, with aid of the briefs of counsel for appellant and for appellee, we shall strive to arrive at a proper determination.

The situation discussed in State v. City of Miami Beach, supra, somewhat resembles the one with which we are dealing. Three proposals had been submitted, and each receved a majority of the votes cast on it; however, in one the total votes deposited were fewer than a majority of those voters qualified to take part. It was held that, notwithstanding the deficient vote in one instance, a majority of those qualified as electors and freeholders did participate, having indicated a choice on the other two propositions, and the three having been offered jointly. The decision was based largely on State et al. v. City of Tampa, supra. The main difference in the two sets of facts is that there only bond proposals were involved, while here there were submitted two unassociated propositions.

The decision in State v. Dade County, supra, seems more in point because the record reviewed showed a combined or simultaneous bond and primary election. This was authorized by law, provided separate boxes and ballots were used and separate returns made. The voting machines were so arranged as to operate independently. Fewer than half those eligible to vote for or against those bonds actually indicated a choice as to their issuance. More than a majority participated, however, if there were added to the ones voting on the bond proposals those qualified to vote on the bond issues who appeared and voted for candidates but ignored the proposals for bonds. In substance, we held that the latter, by indicating a choice of candidates and disregarding the bonds, purposely refused to take part in the bond election, therefore that election was ineffectual. The main dissimilarity between essential facts is

that there the machines were operated separately; here apparently they were not.

The last of the four cited cases, Special Tax School Dist. No. 3, Dade County, et al., v. State et al., supra, discussed the same principle and followed State v. Dade County. The aggregate number of votes on the bonds proposed to be issued was less than half the number of qualified freeholders. The bond and primary elections were held together, but at the polling place those qualifying for both were furnished "pink slips," for the latter, "white slips." A number of the holders of "pink slips" voted for candidates but not for or against bonds. The sum of this number and the number who did cast ballots on the bond proposals was more than a majority of those eligible to receive "pink slips," yet the court held that they could not be counted as participating in the bond election, who, though qualified at the polls, voted only for candidates for office.

To summarize, in the last two cases it was the opinion of the court that there was insufficient participation where, though more than half the electors qualified to vote on bonds appeared at the polls and voted in a combined bond election and primary, fewer than that majority indicated a choice on the bond proposals. · They are not identical with the instant case, but we think there is a principle common to all—namely, that a voter, qualified to cast a ballot for bond proposals and for candidates in a simultaneous election, by indicating a choice only of candidates signifies an intention not to participate in the election with reference to bonds. With this in mind we shall examine now more closely what the record discloses as occurring in the election held by appellee.

It has been said that the purpose of Section 6 of Article IX was to curb the promiscuous issuance of bonds and that its adoption was promoted by the sad, if not disastrous, experiences of the Florida boom and its collapse. In any event, the organic law in unmistakable terms places restrictions on the *power* of municipalities to incur bonded indebtedness. Paraphrasing to fit the instant case: The City of Miami Beach has *power* to issue the bonds in question only if they have been "approved by a majority of the votes cast in an election in

which a majority of the freeholders who [were] qualified electors" participated. It is not a matter of judgment or discretion or even authority, but of power, power withheld until compliance with the organic law.

Now, it is patent that the four proposed bond issues were independent and severable. Either the one for the park or the auditorium or the hospital or the parking area could be issued without affecting the others. They could have been submitted at different times, and their consolidation was solely a matter of convenience. This applied also to the whole disconnected propositions of increased millage for publicity and purchase of a gas plant. Had the issues been presented to the electorate at different elections a voter would have had the opportunity to make a choice in a particular issue and abstain from another. Where, as here, they are consolidated he must, if appellee's contention be correct, in order to vote in one, be placed in the position of participating in the other.

When it is borne in mind that the *power* of the municipality springs from the election in which a majority participate, we think more is needed than the presumption we are asked to indulge that when 1941 electors voted on one or some of the bonds or on one or both of the other proposals they actually took part and expressed a choice as to each bond issue. This presumption would be indulged in the very face of the knowledge that the highest total affirmative and negative vote on a particular issue was 1820, 42 short of a majority of qualified freeholders.

It may be true, as counsel for appellee urges, that it is not uncommon for voters to cast ballots on one proposal or for one candidate and pay no attention whatever to others, but we see no analogy, so far as validity of bonds is concerned, between ballots so treated, incorporating a bond proposal, and those exclusively for the selection of officers or candidates for office. It is the constitutional restraint of *power* that makes a vast difference.

If each issue has a total of affirmative and negative votes exceeding a majority of those qualified to indicate a choice, it is obvious the required number participated, and the power is then granted, provided the affirmative are in the majority, but

unless that appears, the power is withheld. On the face of the returns we could as easily assume that all voters appearing at the poles in excess of 1820, the highest vote on any bond proposal, went there to register a choice on the other proposals and purposely disregarded the bonds, wishing to take no part in securing by their vote the power to the city to issue them.

The appellee undertook to establish its position that it had the power to issue the bonds and that they should be validated by judicial decree. We cannot assume in this case that because nineteen hundred odd voters cast ballots for or against one or more of the six propositions we have described they all took part in each and every bond proposition.

We are of the opinion that each issue failed because the total vote for and against it was less than the number of participants required in order that the municipality be vested with the power to incur the indebtedness. We recede from anything said to the contrary in State v. City of Miami Beach, supra.

Reversed.

CHAPMAN, C. J., BROWN, BUFORD, ADAMS and SEBRING, JJ., concur.

TERRELL, J., agrees to conclusion.