THOMAS and DREW, Justices.
The opinions previously filed upon the original consideration of this cause are withdrawn and the following substituted as the opinion of the Court:
This is an appeal from a final decree and an amendment thereto validating $3,-900,000 issue of hospital bonds (Series of 1966) of the County of Sarasota, Florida, dated June 1, 1966. Subsequent to the submission of this case on oral argument this Court released its jurisdiction temporarily to the trial court for the purpose of determining by stipulation or otherwise the essential facts relating to the physical circumstances and methods by which the elec *522 tion was conducted, including the use of the same or separate machines for the bond and primary elections, total count of electors entering the machines, control of ballots and procedures for checking registries for both elections. The original record sent here did not give sufficient information for this Court to determine whether this bond election was conducted as a separate election distinct and apart from the primary election which was held on the same day or whether the election was conducted at the same time and in conjunction with the said primary election. These facts were essential to the determination of the question of whether, as required by Art. IX, Sec. 6, of the Florida Constitution, F.S.A., a majority of the qualified electors in said county had actually participated in the election. State v. Town of Surfside, Fla.1958, 104 So.2d 579, 581; State v. Dade County, 144 Fla. 448, 198 So. 102. Fiad the election been held as a separate and distinct election, then, under the Surfside case, the master counter on the machine' showing the number of voters who entered the machine would have controlled in determining the number of qualified electors who participated in the election. On the other hand, had the elections been conducted together, then, under our holding in State v. Dade County, the determination of the number of electors who participated could have been made only by adding the total of the votes for and against.
An amendment to the final decree and a supplemental record have now been filed in this cause. The supplemental record clearly establishes that the bond election was held in conjunction with and as a part of the primary election and that the decision in this case as to the number of voters participating in the election is controlled by State v. Dade County, for in order to vote in the primary election each qualified freeholder elector was required to enter the voting machine thereby being registered on the master counter on the voting machine showing the number of persons who had entered such machine for the purpose of voting in both the primary election and on the question of the issuance of bonds. In such circumstances, in accordance with the decision in State v. Dade County, supra, we hold that the number of qualified electors who participated in said bond election was the total of the votes cast for and against the same.
It was largely from this coinciding of elections that there arose the questions now urged by the State to defeat the issuance of the bonds since, of course, no person privileged to enter the polling place to vote for candidates could vote for or against the bonds unless he was also a freeholder. The Canvassing Board, composed of the Supervisor of Elections, the Acting County Judge and the Chairman of the Board of County Commissioners, canvassed the returns and certified [1] that there were 32,823 registered electors who were freeholders hence qualified to vote which number included 2,179 persons who were not registered freeholders hut who had established their right to vote in the bond election under the provisions of Subsection (4-) of Section 100.241, Florida Statutes, F.S.A., [2] that 15,436 persons voted; [3] that 11,385 votes were cast for the issuance of the bonds; and [4] that 4,051 votes were cast against the issue. So the Board concluded that fewer than 50 per cent, of qualified voters participated as is necessary under the provisions of Sec. 6, Art. IX of the Constitution.
A later review of the county records revealed that the number of freeholder-qualified electors had been reduced from 32,823 to 30,502 because 2,321 of the original number of freeholders had subsequently disposed of the property which disqualified them to vote in the bond election. Furthermore, it was discovered that 19,013 persons signed the voting register at the polls, 15,436 of whom actually voted and 3,577 of whom did not. Thereupon the Board of County Commissioners adopted a revised resolution announcing the conclusion that 30,502 persons were qualified and that 15,436 of them cast ballots. Judging *523 from the Board’s resolution following the second canvass this conclusion was reached by the simple process of determining that 2,321, the number found to be registered but not eligible, were included in the number of those who had not voted “in the absence of any evidence to the contrary.” The number of those persons who had voted was not changed and no effort was made to determine what eligible freeholders had or had not voted so that it could be decided what number of the 2,321 ineligible voters had or had not participated.
We apprehend, after a perusal of ap-pellee’s brief, that the conclusion was aided by a presumption that none of the 2,321 persons finally found ineligible cast a ballot because, so it is argued, it is provided in Sections 100.241(6) and 104.14 that it shall be unlawful for anyone to participate in a bond election who is not a qualified elector and a freeholder. Appellee argues that inasmuch as everyone is presumed to act in a lawful way, the Board of County Commissioners could indulge the presumption that, after all, no one voted who was ineligible. This position is plausible but it is hardly convincing. In the confusion of holding simultaneously primary and bond elections, a person could have easily, mistakenly and innocently voted for or against the bonds but he could not have been counted as one of those participating in order to make up the quorum prerequisite to validity of the election as required by the Constitution.
For that matter, it cannot be determined whether or not any of the 2,321 who subsequently disqualified themselves voted in the bond election, although that number was subtracted from the number originally determined to have been eligible.
We cannot accept the argument of the appellee that all doubt about the number of participants required to constitute a ‘quorum’ should be resolved on the theory that no person who was qualified to vote only for candidates entered the polls and took part in the bond election because to have done so would have violated the law. Instead we have the view that the ap-pellee failed to demonstrate that a majority of the electors who were also freeholders participated in the bond election. State v. City of Miami Beach, 156 Fla. 546, 23 So.2d 720.
The trial court, in its amendment to the final decree appearing in the supplement to the record on appeal here, holds that the bonds “should be validated upon the authority of the case of Bowers v. Alachua County, 150 Fla. 581, 8 So.2d [395] 396 (1942), wherein the Supreme Court of Florida approved both the principle and procedure for the Board of County Commissioners to make a determination of the true number of qualified freeholder electors, which procedures and principles were followed in all essential respects by the petitioner in this cause.” This case is strongly urged upon us by the appellee as authority for the action of the Board of County Commissioners in the revised resolution in which 2,321 names of qualified freeholder electors were eliminated from the names appearing on the voting registers.
We have determined, for the reasons hereinabove stated, that the decree appealed from must be reversed. The decision necessarily assumes the power of the Board of County Commissioners to revise the list of qualified elector freeholders after the holding of the election and the certification of its returns. While ordinarily we would not feel impelled to discuss here the applicability of Bowers v. Alachua County, supra, to the issues in this case, we do so in order to avoid future confusion which might arise by virtue of that opinion. Bowers v. Alachua County, supra, was decided in 1942 and the opinion was concerned principally with an interpretation of Section 17 of Chapter 14715, Laws of Florida, Acts of 1931. In that case the Court held that, under the statutes as they existed at that time, the Board of County Commissioners was not bound by lists of freeholders as prepared by the supervisor of registration and sent out with ballot *524 boxes if such lists were, subsequent to said election, found to be erroneous and untrue, and that the Board and the power to thereafter inquire and find the truth as to the number of freeholders in said county qualified to vote and that such number so determined by said Board was the number to be used in ascertaining whether a majority of the qualified elector freeholders had participated in said election as required by the Constitution.
Because of the many changes which have been made since 1942 in the laws of this State relative to the holding and conducting of bond elections and registration of voters, the holding in Bowers v. Alachua County is no longer controlling. Since 1942 the Legislature has enacted a permanent registration system for the registration of voters, including freeholders.[1] This Court has approved enactments vesting in the Boards of County Commissioners the authority from time to time to call for the re-registration of freeholder electors in order to facilitate the determination of the number of freeholders entitled to participate in bond elections,[2] and the statutes have been amended to provide that in order to determine the number of freeholders entitled to vote in each bond election, the supervisor of registration shall determine from the records in his office the number of freeholders appearing on said registration books and shall execute his certificate as to the number which shall be accepted as the determination prima facie of those entitled to vote in said election. The number so certified, plus those electors not shown on said list as freeholders but who present to the inspectors a tax receipt showing a payment of taxes on property in his name or a deed or certified copy thereof on property in his name or makes a sworn affidavit of ownership giving either a legal description, address or location of the property in his name, shall be the number of persons qualified as freeholder electors.[3] We find no provision in the statutes as they existed at the time of the holding of this election which authorized the Board of County Commissioners to substitute in any way its findings for the findings determined by the method aforesaid. There is no formula by which the exact number of qualified elector freeholders on any given day can be determined. The Legislature has prescribed a methdd to be used in making this determination and we hold that such method is exclusive.
Reversed and remanded with directions to dismiss the petition to validate.
THORNAL, C. J., O’CONNELL, CALDWELL and ERVIN, JJ., and McCORD, Circuit Judge, concur.

. Chapter 98, Fla.Statutes 1965, F.S.A.

. State v. County of Sarasota, Fla.1953, 62 So.2d 708.

.See Section 100.241, Florida Statutes 1965.