WENTWORTH, Judge.
This appeal is from a final'judgment ordering that the absentee ballots cast in the 1978 election for Wakulla County Judge not be counted, and that the appellee Flack should be certified and commissioned in that office. Upon consideration of briefs and oral argument by the parties and inter-venors, we conclude that the result reached by the trial court complies with the mandate in Flack v. Carter, 392 So.2d 37, 40 (Fla. 1st DCA 1981), citing Boardman v. Esteva, 323 So.2d 259 (Fla.1976), and requiring a determination of whether there has been substantial compliance with the essential requirements of the absentee voting law and whether irregularities adversely affect the sanctity of the ballot and the integrity of the election. Our recent decision in Potter v. Bolden, 416 So.2d 6 (Fla. 1st DCA 1982), has again recognized “the general rule stated in Boardman, that where the number of invalid absentee ballots is more than enough to change the result of the election, then the election shall be deter *1125 mined solely upon the basis of the machine vote.” We do not, as appellant and interve-nors urge, reconsider that proposition.
Among the numerous issues posed by the parties on appeal and cross-appeal, the dispositive point appears to us to be the propriety of the court’s conclusion that five named illiterate electors “received assistance in casting their ballots in a manner other than that provided by law and under the circumstances of this case, these ballots were not cast in substantial compliance with the essential requirements of the absentee voting law and adversely affected the sanctity of the ballot and the integrity of the election.” The factual and procedural predicate for that conclusion is stated as follows by the order appealed:
The Wakulla County Canvassing Board certified the following to be the results of the election referred to in 1. above:
Poll Votes Absentee Votos Total
Carter 1704 89 1793
Flack 1706 85 1791
On November 17, 1978, the plaintiff brought this civil action asking that the Court declare her to be the winner of the election because there were enough invalid absentee votes counted to have affected the election.... On November 17, 1981, this Court entered a pretrial order which ordered that the following issues be submitted to a jury: . .. Whether certain electors whose absentee ballots were counted received assistance in casting those ballots contrary to Section 101.-051, Florida Statutes.
By that portion of its verdict which has been challenged and not yet affirmed, the jury determined that none of the following named electors ‘cast invalid ballots in the November 7, 1978, General Election because of their having received unlawful assistance in casting those ballots’: . .. During its deliberations, the jury submitted the following inquiry to the Court in relation to the issue of unlawful assistance:
1. The jury wishes the Court to state clearly what the attorneys said in their own arguments:
Re: 3 What is the meaning of the law? Is it lawful to assist more than one absentee voter outside the supervisor’s office?
The Court gave the following response to the foregoing question:
1. In regard to this question, the law is contained in the statute, and if it will be of help to you, we will permit you to take a copy of the statute to the jury room with you.
It was error for the Court to have submitted question numbered 3. on the verdict form to the jury without instructions as to the meaning of the law, or on the law of statutory construction, and this was compounded by the Court’s failure to provide a more meaningful response to the jury’s inquiry in regard to that question.
Any factual holding that the following named electors did not all receive from Mrs. Frances Smith assistance in casting their absentee ballots would be contrary not only to the great weight of the evidence but to all the relevant evidence:
. . . There was evidence introduced at the trial which indicated that Mrs. Frances Smith supported the defendant and there was no evidence to the contrary. Those voters listed in 14. above were all illiterate to the extent that they would not have known had their ballots been marked contrary to their instructions.
The controlling statutory language is that appearing in § 101.051, Florida Statutes, as follows:
101.051 Electors seeking assistance in casting ballots; form to be executed; forms to be furnished ....
(3) Any elector applying to cast an absentee ballot in the office of the supervisor, in any election, who is unable to read or write or who, because of some physical disability, needs assistance in voting may request the assistance of some person of his own choice, who has not previously assisted more than one other person during the election, in casting his absentee ballot; however, a blind elector may receive the assistance of any person of his *1126 own choice. However, no supervisor of elections or his deputies or members of his staff shall act in such a capacity. (4) If an elector needs assistance in voting pursuant to the provisions of this section, the clerk or one of the inspectors shall require the elector requesting assistance in voting to take the following oath:

I,-(Print name)-, swear or affirm that I am a registered elector and request assistance from _ (Print name) _ in voting at the (name of election) held on (date of election) for the following reason -[e.s.]
Contrary to the apparent assumption of the trial court[1] and the parties to this cause, we conclude from a study of § 101.051, in the context of its history and the remainder of the election code, that subsection (3) is directéd to all electors who seek assistance in voting absentee. This means, of course, that the reference to those who “cast an absentee ballot in the office of the supervisor” is not limited to those who appear personally in the supervisor’s office to execute and deposit their ballots. It serves instead to encompass all electors voting absentee, wherever they may sign and deposit their ballots, because all such ballots are legally “cast” in the supervisor’s office and thus distinguished from those cast at the polls.[2] That view of the absentee voting process has been taken by the Florida courts in resolving other disputes as to whether absentee ballots are actually cast when submitted before the date of an election:
No ballots have been cast nor will be cast by absentee voters until that date arrives. The law has merely provided for the accommodation of those who will not be present at their respective election precincts on that day that they may prepare a ballot which will be cast for them on that day ....
State ex rel. Peacock v. Latham, 125 Fla. 793, 170 So. 475, 480 (1936). That technical use of the term “cast”[3] is substantiated in a general way by such explicit provisions of the present code as that permitting cancellation of marked ballots “provided the elector returns the ballot whether voted or not ... to the election board.” § 101.69, Florida Statutes.[4] Our view of absentee ballots as those cast in the supervisor’s office, in the application of this section of the law, does not of course preclude other meanings for the term “cast” so as to include the entire process reaching back to the deposit of mailed ballots when context so dictates.
More compelling reasons for our construction of the statute may be found in the extreme particularity with which assistance at the polls is controlled, in the complex history of the regulation of all assistance to illiterates and other handicapped electors under Florida law,[5] and in the general doctrine that specific statutory authority must exist for voter assistance because, absent such authority, the acts involved in voting are of such personal character that they *1127 may not be delegated.[6] A substantial revision of § 101.051 in 1977[7] removed its former references to special registration cards under § 97.061, Florida Statutes, and removed from the subsections on both absentee and poll assistance the language on “examination required by this section,” leaving that requirement to be covered by subsection (4) as a condition to assistance for any elector who “needs assistance in voting pursuant to the provisions of this section.” Although appellant and intervenors devote some argument to the alleged absence of notice to absentee voters as to these restrictions, the record sheds no light on this subject.[1] We accordingly do not treat such issues beyond noting the notice provided by the statute itself in conjunction with inquiry arguably invited by the specific instructions prescribed by § 101.65 that each elector shall “[s]ign your name” and “[m]ark your ballot in secret as instructed on the ballot.”
From a consideration of the analysis of particular defects in absentee ballots set forth in Boardman, supra, we reach the further conclusion that the trial court correctly assessed the effect of all the facts before him as a substantial violation of essential requirements of the absentee voting law, sustaining his conclusion that the improper assistance in the circumstances of this case adversely affected the sanctity of the ballot and the integrity of the election.
We find no merit in other arguments presented here by appellant or by the cross-appeal. Motion by appellee to strike portions of the briefs, or to supplement the record, is mooted by our conclusion on the merits.
The judgment is accordingly affirmed.
SHAW and THOMPSON, JJ., concur.

. Although the court correctly found the ballots to be unlawfully cast because of assistance “in a manner other than that provided by law,” the further reason stated is in our opinion incorrectly based on a view that the statutory provisions “do not authorize nor make provision for assistance to absentee voters not casting their ballots in the office of the supervisor, but if they did the legislature would surely have provided for the regulation of that assistance in a manner similar to that set forth in Section 101.051; i.e., the execution of a Declaration to Secure Assistance and a limitation on the number of voters assisted by any one person.”

. Subsections (1) and (2) refer to assistance in “the voting booth” on election day. All subsections together accordingly spell out the authority for and restrictions upon assistance to any elector in voting.

. “The word ‘cast’ means ‘deposit (a ballot) formally or officially .... ” Port of Palm Beach District v. State, 156 Fla. 99, 22 So.2d 581, 582 (1945).

. Other sections are specific as to requirements “[i]f an elector appears in person to cast an absentee ballot ...which could easily have been done in § 101.051(3) if that distinction had been intended.

. See generally AGO 059-180, Bienn. Report of the Florida Attorney General 1959-1960.

. Cases collected 29 C.J.S. Elections, §§ 208, 201(1), 26. Cf. AGO 078-89, Annual Report of the Fla. Attorney General 1978, and AGO 064-126, Bienn. Report of the Florida Attorney General 1963-1964.

. Chapter 77-175, Laws of Florida, General Acts of 1977, Section 3.