60 So.2d 482 (1952)
TOWN OF COREYTOWN et al.
v.
STATE ex rel. ERVIN, Attorney General et al.
Supreme Court of Florida, Special Division B.
August 29, 1952.
Rehearing Denied October 2, 1952.
*483 Wolfe, Wightman & Rowe, John R. Bonner, Clearwater, and Charles J. Schuh & Son, St. Petersburg, for appellants.
Richard W. Ervin, Atty. Gen., Richard G. Key and Jack Clark, St. Petersburg, for appellees.
REVELS, Associate Justice.
This is an appeal from final judgment of ouster entered August 1, 1951, by the Circuit Court of the Sixth Judicial Circuit of Florida, in and for Pinellas County. The appellees (relator and co-relators in the Court below) filed their amended information in the nature of a quo warranto suit on January 30, 1951. On February 10, 1951, appellants (respondents in Court below) filed defenses in the nature of motion to strike and motion to dismiss, which were denied on April 10, 1951, and the appellants were allowed until May 1st to file their reply to said amended information. On said date appellants filed their answer and defenses to said amended information, and on June 15th appellees filed a motion for judgment of ouster notwithstanding the return. Subsequently, on July 2, 1951, the Court entered an order of continuance until July 20, 1951, at 1:00 p.m. From an examination of the record before this Court it appears that the only order entered by the Court below on July 20, 1951, was one setting the cause for trial before a jury Monday morning, at 9:30 a.m., July 23, 1951; that prior to going to trial on July 23, 1951, the Court held a pre-trial conference on the case. It is considered advisable to incorporate herein the material part of the proceedings at the pre-trial, to wit:
"It has been set by the court; the jury is in the courtroom ready for trial of this case. Present are Mr. Jack Clark and Mr. Richard G. Key, representing the Relators and Co-relators. Mr. Maurice Schuh and Mr. John W. Rowe, representing the respondents. After a hearing on a motion for judgment of ouster, notwithstanding the return argued before this court in St. Petersburg, Florida, last Friday, July 20, 1951, the Court at that time stated the issue as it seemed to him to be was whether or not twenty five or more free holders, and registered voters, lived in the area incorporated and participated in the meeting of incorporation. *484 The town requested this jury trial and requested right to amend its answer to include, or to look into the matter of amending the answer to show whether or not twenty five people were there at that time in accordance with the qualification required by Section 165 or the Laws of Florida [F.S.A.] relating to the incorporation of cities and towns. The answer of the respondents also set up estoppel on the co-relators' part and laches and estoppel as far as the relator and co-relator were concerned. The court at that time announced that he did not feel that estoppel would lie against the State of Florida in this case because there had been no detriment to the respondents. If anything, a benefit had been accruing to them all along rather than a detriment as required for estoppel or laches to lie. Thus, the issue was limited to whether or not there were twenty five or more free holders and registered voters resident in the area sought to be incorporated.
"The Court gave the respondents an opportunity to amend and set the case for trial by jury Monday Morning at 9:30, July 23, 1951. Saturday about noon, July 21st, counsel for the respondents, Mr. Rowe, called the court and advised the court that he could not see his way clear with propriety to amend his answer to recite that there were twenty five or more registered free holders living in the area sought to be incorporated at the time of the reported incorporation, since he had investigated the matter. Is that it, Mr. Rowe?
"By Mr. Rowe: I will make a statement for the record, your honor.
"The Court: That he had investigated the matter and could not find whether or not there were actually twenty five or more people there and stated to the court that the town could consent to the entry of the order or judgment of ouster at this proceedings. Thus, as the court determines it, there is no issue of fact to be tried by the jury since the court has limited the issue of fact to the question of whether or not there were twenty five or more residents free holder registered voters, and it apparently is conceded by counsel for respondents that there were not twenty five people registered as free holders resident in the area. Am I correct in that.
"Mr. Rowe: I might say, your honor, that we are not ready for trial this morning. The court rendered its decision last Friday afternoon at 3:00 o'clock and of course, it was about 4:00 o'clock before I got back here and started working on the matter and I went to the registrar's office to determine from the registered list there and we found that of those persons who subscribed and who were at the incorporators' meeting that there were 31 of them in that precinct who were registered voters but only 17 of them were registered free holders, the wife of one of them not registering as a free holder. That would mean that there were thirteen, according to the records, non registered free holders.
"Now, I tried to determine by going to the abstract office, if it would be possible to find out if those names would be listed with any interest in any property and I was unable to do that and after having done that I called the court, because it was impossible  it was impossible for us to subpoena the 31 or so persons and have them here this morning and our contention is, your honor, that under the statute which says that those who participated in the hearing must be free holders and registered voters. Now, that doesn't mean that they had to be registered free holders and the court has said and the legislature has said that a free holder shall be deemed to be a person who has an immediate, beneficial ownership interest, real or equitable and the title in fee simple to the land stated.
"We are not in the position, your honor, to make that allegation that they were registered. I mean that they did have beneficial or legal interests *485 in land because we haven't had the opportunity to do that.
"The Court: They have to be registered with the supervisor of registration as a free holder, do they not, before they are entitled to participate?
"Mr. Rowe: The statute doesn't say that. Here is the wording of the statute on it. Section 165. Here is the essence. `A notice requiring all persons, male and female, who are freeholders and who are registered voters residing in the proposed corporate limits.' I am a free holder, though I am not a registered free holder under the statute there, so your honor 
"The Court: The court construes it as a matter of law then  that qualification  `who are freeholders and who are registered voters'  that they must be both in order to participate. That is a matter of law.
"Mr. Rowe: In other words, that is your ruling?
"The Court: That is my ruling.
"Mr. Rowe: Your honor, as we have said, we are not in position to go to trial on this matter. We haven't had an opportunity to talk to all these individuals here and I asked the court Friday if he would allow us to consider amending or return here and at this time I move the court to permit the respondents to strike from their answer and defenses subsections 3, 4, 5, and 6, of Defense Number 1, and further move the court to allow us to rephrase and strengthen Defense Number 2 and state more specifically the facts constituting acquiescence and recognition and to abandon Defense Number 3 and assert Defense Number 4, of course, and then if the court please, enter its order of ouster based upon our amended answer. I do that for this reason, your honor, that I think it is encumbent upon us as counsel of the town. I don't know what disposition the town will make of this matter  it is something solely for their decision but I do think it is encumbent upon us to have the record in shape as best we can prepare it in the event that the town should desire to go further with the matter.
"The Court: I want to accommodate you, Mr. Rowe, to get the record in shape for appeal if you want to. I have given you and the town, I think, every opportunity in this matter to bring it to a head. The matter has been pending since November 18, 1950, and at every hearing there has been something wrong  we couldn't hold the hearing, and finally we got it down to issue and you should have been ready for trial at the time you filed your regular answer. Do you have any objections to striking Paragraphs 3, 4, 5 and 6, of Defense One, amending Defense Two, Mr. Clark?
"Mr. Rowe: To show more specifically the facts rather than the conclusions.
"The Court: I am going to deny that because I have already ruled that laches or estoppel do not lie. If I am wrong the Supreme Court can correct me on it. What about the third? Did you say anything about the Third?
"Mr. Rowe: I will withdraw my motion to abandon that if the court doesn't allow us to amend the second defense, so I move, in view of the court's ruling then, the motion stands that we be permitted to strike 3, 4, 5 and 6 of Defense Number 1.
"The Court: You want to strike them?
"Mr. Rowe: Yes, sir.
"The Court: That doesn't carry with it any request for amendment?
"Mr. Rowe: No, sir, just strike it.
"The Court: I suppose you won't object to that, Mr. Clark. The motion will be granted.
"Mr. Rowe: And then we be permitted to file an amended answer and defenses according to the court's ruling here  that is leaving out 3, 4, 5 and 6 of Defense One and then the answer will be the same.

*486 "The Court: Your answer is One and Two. That is all you have left.
"Mr. Rowe: Yes, but in other words, our amended answer would also reflect Defenses 2 and 3 as they now stand. Of course, the court has already ruled against them.
"The Court: I just asked you if you wanted an opportunity to amend.
"Mr. Rowe: I am not asking to amend. I am just asking to strike and file our amended answer.
"The Court: I don't follow you, Mr. Rowe. I'm sorry. I don't know what you are driving at.
"Mr. Rowe: If the court has permitted us to abandon or strike 
"The Court: 3, 4, 5 and 6 of the First Defense. You have asked to strike those and I granted you that because you said you didn't want to amend.
"Mr. Rowe: Then our answer will be Defense Number 1, subsections 1 and 2, and Number 2 Defense will be the same and Number 3 will be the same and 4 will be the same.
"The Court: The primary thing that I am concerned with is that I think that I have given you every opportunity to amend that can be given, Mr. Rowe. I don't want to delay this matter. We have a jury out there waiting. Under those circumstances the record will show what my view of the matter is. I don't know what your position will be after you have a judgment of ouster against you and then file an amended return. I don't know what good it is going to do you.
"Mr. Rowe: In defense of that I wish to say that this matter could have been sounded at the last term of court. We filed our amended answer in this case on May 1st  we applied the court's ruling to the defenses and motions along in February so I contend that it hasn't been vigorously prosecuted.
"The Court: You are the one that has had the dilatory tactics, but it hasn't been vigorously prosecuted either. The Courts have been criticized about getting these cases at issue and getting them out of the way and then we finally took hold of this thing and the preliminary issues were over. I have done my best to give everybody an opportunity to be heard on this. This relates to both the relators, co-relators and respondents. Therefore, I take it, it leaves us with a judgment of ouster which will recite that the respondent conceded there were not twenty five registered free holder voters resident in the area incorporated. * * *".
The record does not disclose that notice was given in accordance with Common Law, Rule 32, 30 F.S.A., by either party or the Clerk of the Court. At the pre-trial conference the appellants admitted there were thirty-one registered voters who participated in the incorporators' meeting, but only seventeen of them were shown to be registered freeholders in the office of the Supervisor of Registration. The Court ruled that the issue was limited as to whether or not there were twenty five or more persons, whose freehold interests were registered with the Supervisor of Registration and who were registered voters and participated in the incorporators' meeting at the time the municipality was incorporated under Chapter 165, Florida Statutes, F.S.A.; and denied appellants' motion for leave to amend.
Thereupon final judgment of ouster was entered in which the Court below ordered, among other things, "that the respondents be and they hereby are allowed to strike Sub-sections 3, 4, 5 and 6 of Defense Number 1 of said answer and that the respondents' motion to amend Defense Number 2 be and the same is hereby denied."
In State ex rel. Johnson v. City of Sarasota, 92 Fla. 563, 109 So. 473, it is said "quo warranto is a civil rather than a criminal remedy, and the pleadings are governed generally by the rules applicable to ordinary civil proceedings." Florida Common Law Rule No. 32, requires the *487 giving of 15 days written notice by either of the parties or by the Clerk of the Court, that the case is ready for trial and will be placed on the trial calendar. See Florida Common Law Rule 32, Paragraphs A and C. The giving of said notice is mandatory upon the Court and litigants, unless the parties to the action waive the same and consent to trial by proper stipulation duly made and entered. National Trucking Company, Inc., v. Gill, 132 Fla. 844, 182 So. 220.
Common Law Rule 16 provides that after all issues are settled the Court may of its own motion set a case for pre-trial conference to consider and determine: "(1) The simplification of the issues; (2) The necessity or desirability of amendments of the pleadings; (3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof; (4) The limitation of the number of expert witnesses; (5) Such other matters as may aid in the disposition of the action." The pleadings had not been settled before the Court set the case for trial or before the calling of the pre-trial conference. This is suggestive only because no definite formula has been devised for pre-trial procedure and every Court should work out its own plan for best results, but experience has demonstrated that the Court and attorneys should approach this procedure with a cordial and co-operative attitude. The Court should not lose patience, nor permit the attorneys to engage in heated arguments. A pre-trial should not be attempted while a jury is waiting to try the case, because this places every one under pressure. After the case has been docketed in accordance with Common Law Rule 32, the Court should set a date for pre-trial, giving sufficient notice to the attorneys to permit preparation, and at the pre-trial allow reasonably sufficient time to fully explore the case. The Court should guide the pre-trial proceedings in a calm and frank discussion and exploration to accomplish the purposes outlined in Common Law Rule 16. At the conclusion of pre-trial the Court should set a trial date, or mark the case ready to be set for trial. If additional pleadings are required or advisable, return the case to the progress docket. After all, Rule 16 can be an effective instrument, for the purposes intended, only under the calm and skillful guidance of the Court, with the co-operation of the attorneys.
Appellants had not previously amended their answer and their motion for leave to do so was denied. Florida Common Law Rule 15, Subsection A provides "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." To settle the issues of a case and to meet the ends of justice it becomes necessary to allow parties to amend pleadings, and the rules of procedure so provide that "leave shall be freely given when justice so requires." This is a discretionary matter with the Court, but the power of discretion should not be so exercised that the rights of litigants are defeated.
The appellants should have been allowed leave to amend, setting up whatever defenses they considered advisable and appropriate, and thereafter the Court should have passed upon the sufficiency of such defenses in accordance with the law pertaining thereto. Leave to amend should not be denied, unless and until the privilege to amend has been abused. Even though the Court below is of the opinion the proffered defenses would not constitute a valid defense, the amendments should be allowed and ruled on so that the record of the case will be complete. Marks v. Fields, 160 Fla. 789, 36 So.2d 612; Stranahan, Harris & Co. v. Hillsborough County, 154 Fla. 658, 18 So.2d 789; Twyman v. Livingston, Fla., 58 So.2d 518.
The Court below ruled at the pre-trial conference that it was a matter of law and not of fact to be qualified to participate in the incorporators' meeting each registered voter must also be registered in the office of the Supervisor of Registration as a freeholder.
Section 165.01, Florida Statutes, F.S.A. reads "It is lawful for the male and female inhabitants, who are freeholders and registered *488 voters of any hamlet, * * *." Throughout Chapter 165, touching upon qualifications of persons eligible to participate as incorporators of a town, the language used is "who are freeholders and registered voters".
This Court has heretofore defined the meaning of "a freeholder" in Dean v. State, 74 Fla. 277, 77 So. 107, 109, as "One who has an immediate beneficial ownership interest, legal or equitable, in the title to a fee-simple estate in land, may be regarded as a `freeholder'". Therefore, one who owns an interest, legal or equitable, in land is a freeholder, and to be a freeholder one does not have to register as such in the office of the Supervisor of Registration. The registration of the office of the Supervisor of Registration of one's ownership interest in land is evidence of an existing fact as of the date of such registration, but the fact that such ownership interest in land is not so registered is not conclusive that one is not a freeholder. Conversely, one may possess an ownership interest in land on the date of registration as a freeholder, but immediately thereafter dispose of his ownership interest in land, and by reason of that lose his legal status as a freeholder, yet be registered as such in the records of the Supervisor of Registration. The fact of ownership or nonownership interest in land determines whether or not a person is or is not a freeholder. It is true that for certain types of elections the statutes require the freeholder to be registered as such in the office of the Supervisor of Registration. In Holmer, Supervisor of Registration, v. State ex rel. Stewart, 158 Fla. 397, 28 So.2d 586, 588, we said "the date of the bond election must fix the date for final purge of the registration list as a prerequisite to vote in a bond election."
Chapter 165, Florida Statutes, F.S.A. does not require that persons be registered freeholders, but only that they be persons who are freeholders and registered voters. The question as to who are freeholders qualified to participate in an incorporators' meeting is a question of fact to be determined as of the date of said meeting by due course of law. The fact of non-registration as a freeholder in the office of the Supervisor of Registration will not constitute a disqualification if the registered voter did in fact have an ownership interest in land on said date. A person can be a freeholder by virtue of ownership interest in land, yet never register as such in the office of the Supervisor of Registration. It is a question of fact to be properly determined as to whether twenty-five or more of the registered voters, who participated in the incorporators' meeting of the Town of Coreytown, held an ownership interest in land on the date of said incorporators' meeting.
The judgment is reversed and the cause is remanded for further proceedings by due course of law.
Reversed and remanded.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., concur.