CARL HOLMER, JR., as Supervisor of Registration of Dade County, Florida and CHARLES H. CRANDON, PRESTON B. BIRD, HUGH PETERS, and VAL C. CLEARY, as members of Board of County Commissioners of Dade County, Florida, v. STATE OF FLORIDA, ex rel., JOSEPH S. STEWART, JAMES I. KELLER, JR., and FRANK J. KELLEY.

28 So. (2nd) 586                                   June Term, 1946
January 10, 1947                                         En Banc

*Hudson & Cason, George C. Simpson, Reed Liggitt, Park H. Campbell* and *Francis C. Rearick,* for appellants.

*Robert H. Anderson, Hunt & Salley, Hall & Hedrack* and *Thurman A. Whiteside,* for appellees.

TERRELL, J.:

Appellees are qualified electors and freeholders in Dade County. Appellants are Supervisors of registration and Members of the Board of County Commissioners of Dade County. Appellees sought by mandamus to compel the Supervisor of Registration to certify to the Board of County Commissioners that the number of qualified elector freeholders entitled to participate in Jackson Memorial Hospital bond issue, held May 7, 1946, was 64,071, instead of 64.171, as previously certified, and to compel the Board of County Commissioners to re-canvass said election and declare by resolution that more than fifty per cent of the qualified elector freeholders participated in said bond election and that it carried.

The alternative writ was issued and among other things alleged that the certificate of the Supervisor of Registration was erroneous, in that (a) it certified that 64,204 persons were eligible to vote in said bond election; (b) that 77 of said electors died prior to the election; (c) that 53 names so certified were not qualified freeholders, and did not vote at the election; and (d) that three of the names certified were not freeholders on the day the registration books closed, and did not vote in the election. In their return to the alternative writ the County Commissioners admitted the primary allegations but alleged that they were without knowledge as to accuracy of the lists of electors certified by the Supervisor of Registration. The Supervisor of Registration also filed a return, in which he admitted the primary allegations of the alternative writ but denied that if his certification was correct it would show 64.071 qualified freeholders or that more than fifty per cent of the qualified elector freeholders participated in the bond election.

The return of the Supervisor of Registration shows that after all corrections were made the certified list of qualified elector freeholders should contain 64,179 names. The court found that the correct list of qualified electors should contain 64,079 names, and ordered the Supervisor of Registration to certify such a list to the County Commissioners. He also commanded the County Commissioners, on receipt of such certificate, to re-canvass the return of said bond election and adopt a resolution declaring the number of qualified elector freeholders

to be 64,079; that 32,048 of them participated in the Jackson Memorial Hospital bond election, being more than fifty per cent of the qualified elector freeholders in the County, of whom 28,205 voted for the bonds and 3,853 voted against them. The alternative writ was accordingly amended to show that 64,079 electors, instead of 64,071, were eligible to vote in said bond election. Peremptory writ of mandamus was accordingly issued, and this appeal was prosecuted.

The essential question for determination may be stated as follows: Who were eligible to be certified as voters in the Jackson Memorial Hospital bond election, and should such eligibility have been determined as of the date of the election, or should it have been determined as of the date the registration books closed, thirty days prior to the bond election?

This question is concluded by Section 6, Article IX, and Section 2, Article VI, of the Constitution, the pertinent part of the former being as follows:

" . . . the Counties . . . of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties . . . shall participate, to be prescribed by law . . . "

We do not deem it necessary to quote Section 2 of Article VI, since it relates only to the duty of the Legislature to provide for the registration of legally qualified electors in the various counties and inhibits all persons from voting in bond or other elections who are not qualified and registered according to law.

Pursuant to Section 2, Article VI, the Legislature enacted Sections 103.03, 103.04, 103.06, 103.10, 103.17, Florida Statutes 1941, and Chapter 22971, Acts of 1945, (Sections 4, 10, 13, 14, and 17) relating to registration in Dade County. All these provisions have to do with the registration and qualification of electors for bond, State, County, and district elections, but we do not consider it necessary to quote them, because we are only remotely concerned with some of them, and we think the law is embraced in the quoted provision of

the constitution. We cite the pertinent acts for reference only.

Who are qualified elector freeholders, entitled to participate in the bond election drawn in question, and what date determines their qualifications? Appellees contend that the date the registration books close, thirty days before the bond election, determines the time for the qualification of electors, while appellants contend that the date of the bond election is the time limit to qualify, and that any person who was registered as an elector before the registration books closed, and who was on that date, or on any subsequent date before the election, became a freeholder, and remained such at the date of the election, is qualified to vote in the bond election. It is certain that one must be a qualified elector and a freeholder in order to vote in the bond election.

Certain provisions of Section 103.06, and other cited provisions, Florida Statutes 1941, including provisions of Chapter 22971, Acts of 1945, if read in isolation, might support appellees' contention, but if read in connection with Section 6, Article IX, of the Constitution, we are convinced that a different conclusion must be reached. When the Constitution prescribes a remedy, the Legislature may regulate the manner of its exercise, but it is powerless to revoke or change it or to place an undue burden on its exercise. The very terms of Section 6, Article IX, point to the election as the date to determine the qualification of freeholders as electors in bond elections, and every logical deduction from the Constitution points to this date. To so hold is not in conflict with the statutes.

During the interim between the close of the registration books and the bond election, the Supervisor of Registration may omit from his list the names of those who became disqualified to vote in the bond election, by reason of death or other change in status, and he may add to the list the names of any who were erroneously omitted in the first place, the names of those who qualified as freeholders after the books were closed, or who for other reasons have become qualified to vote in the election.

Other facts support the conclusion that the date of the bond

election must fix the date for final purge of the registration list as a prerequisite to vote in a bond election. In a fluid population, such as exists in a new country like ours, electors are constantly moving from place to place. To vote in a bond election the voter must be a qualified freeholder elector on the day of the election. If he has died, moved away and permanently changed his residence, was erroneously registered as a freeholder, or has otherwise changed his status, so as to disqualify him to vote, he should not only be stricken from the registration list for that reason, but his name should not affect the quorum required by the Constitution to participate in the election. No other arbitrary date answers the purpose so well.

It follows that under Section 6, Article IX, of the Constitution, any duly qualified elector who is a freeholder residing in the county, district or municipality where a bond election is being held may participate in such election; that his qualification to so vote is determined as of the date of the election, and that following said election the Supervisor of Registration may be compelled by mandamus to correct the list of qualified elector freeholders, by removing therefrom the names of those who were freeholders at the time of registration but who were not freeholders on the day the registration books closed, or he may voluntarily correct the list of qualified elector freeholders by adding those omitted from the original list through error, and he may make such other corrections as will make the registration books speak the truth as to status of qualified elector freeholders, in compliance with the law as stated in this opinion.

Other questions urged have to do with matters of procedure or matters incident to the question discussed here, and for that reason do not require further discussion, as we think they are answered in this opinion. The judgment appealed from is accordingly reversed, with directions to proceed accordingly.

Reversed.

CHAPMAN, C. J., BUFORD and THOMAS, JJ., concur.

ADAMS, J., dissents.

SEBRING and BARNS, JJ., not participating.