Proceeding by the Town of Baldwin against the State and others to validate town water supply and distribution system bonds. From a decree dismissing the petition, the town appeals.
Reversed.
October 15, 1948, the Town of Baldwin held an election to determine whether or not it should issue bonds in the amount of $75,000 for the construction of a municipal water supply and distribution system. When the election returns were canvassed it was determined that a majority of the qualified elector freeholders participated and that a majority of those participating voted in favor of the bonds. In November 1948, the Town filed its petition to validate the bonds. The State answered the petition attacking the validity of the bond election on the grounds that both the notice of the election and the notice of the special registration to freeholders were insufficient in law. On final hearing the petition was dismissed and this appeal was prosecuted from that decree.
The first point for determination may be stated as follows: Did the notice of bond election and the notice of registration therefor meet the requirements of Section 103.02, Florida Statutes of 1941, F.S.A., the pertinent part of which is as follows:
"* * * In the event it shall be determined to hold any election under this chapter to decide whether a majority of the freeholders who are qualified electors are in favor of the issuance of bonds in such * * * municipality, * * * the governing authority of the municipality * * * shall by resolution order an election to be held in said * * * municipality and shall give at least thirty days' notice of said election by publication in a newspaper published in the county wherein said election shall be held."
It is contended that this Court in Holmer, Supervisor of Registration, et al. v. State ex rel. Stewart, 158 Fla. 397, 28 So.2d 586, construed the quoted statute to mean that the qualification of freeholders to vote in bond elections such as that in question was determined as of the date of the election, while both the notice of election and notice of registration limited the right to vote to freeholders who were registered and qualified to vote on the date of the closing of the registration books. The bond election was held October 15th, while the registration *Page 349 
books closed October 8th, seven days earlier.
Sections 103.03, 103.04, 103.05 and 103.14, Florida Statutes 1941, F.S.A., contain other provisions with reference to registration and qualification of electors to vote in bond elections, but we do not deem it necessary to discuss them. The notices in question were published for the length of time and substantially in the form required by the statute. It is true that they were slightly at variance with the doctrine of the Holmer case as to date the qualification of electors is determined, but in view of the finding that a majority of the qualified freeholders participated in the bond election and that a majority of those who did participate voted for the bonds, we do not think the point raised was sufficient to condemn the validity of the bonds. This holding is supported by the fact that no one who may have been affected by the variance between the notice and our holding in the Holmer case is here complaining and there is no suggestion that the result of the election was affected by it.
It is next contended that the election was void and of no effect because of unconstitutional provisions in the town charter relating to the qualification of freeholder electors.
The provision of the town charter alleged to be unconstitutional is that part of Art. 6, Section 1, Chapter 24387, Special Acts of 1947, as follows:
"* * * Provided, however, that no such negotiable bonds of said Town shall ever be issued, until previously authorized by a majority vote of the qualified electors of said Town who own at the time of said election, and have owned for three months prior thereto, real estate therein and who have paid their Town taxes for the year prior to that in which said election is held."
Section 6, Article IX of the Constitution, F.S.A., defines the qualification of electors in bond elections and the only requirement is that they be free holders and qualified electors. The additional qualification imposed by the City Charter is that they must have owned real estate for three months prior to the election and must have paid their town taxes for the year prior to that in which the election was held.
To avoid the effect of the conflict between section 6, Article IX of the Constitution and the provisions of the City Charter as quoted, the registration officer made three lists of qualified electors as follows: (1) Those qualified under the quoted part of the town charter. (2) Those who bought land in the town within three months prior to the election. (3) Those qualified as electors who were not registered as freeholders but who presented themselves at the polls with satisfactory evidence of property ownership as required by law. The total number of eligible voters as shown by these lists was 200. Of this number 175 participated in the election, 97 voting in favor of the bonds and 77 voting against the bonds. Every qualified elector freeholder who presented himself at the polls was permitted to vote regardless of the charter provisions. The town officers evidently observed the variance in the town charter from the terms of the constitution and followed the latter in holding the election. No one intervened to challenge the validity of the election and it affirmatively appears that no one was denied the right to vote because of the terms of the charter. There was no attempt to enforce the terms of the town charter.
The Town of Baldwin is a small municipality near Jacksonville. Several mass meetings were held and the people had full knowledge of the purpose for which the bond election was held. It affirmatively appears that no one was denied the right to vote because of the additional requirements of the city charter. It is also shown that some electors were permitted to vote who had not paid their town taxes for the preceding year and that no one who applied to vote was denied the privilege.
Since the city officers declined to observe the alleged unconstitutional part of the charter and made no effort to enforce it, and since we are shown no reason why it should be construed as having invalidated the election, this Court should respectfully decline to so hold. It is shown that a majority of those qualified to vote participated in the election and that of these a majority voted in favor of the bonds. There is not *Page 350 
a suggestion of fraud, neither is there an attempt to show that any one qualified to vote was deceived or was prevented from doing so because of the provisions of the city charter imposing qualifications to vote in addition to those prescribed by the constitution. It is shown that some in this class did vote and it is not charged that there were others who wanted to vote.
It is therefore our view that the election was valid, that the trial court erred in dismissing the petition to validate the bonds, so his judgment is reversed.
Reversed.
TERRELL, Acting Chief Justice, CHAPMAN, THOMAS, and HOBSON, JJ., and BROWN, Associate Justice, concur.
SEBRING, J., and WHITE, Associate Justice, dissent.