TERRELL, Chief Justice.
North Broward Hospital District, hereinafter referred to as the District, was created by Chapter 27438, Special Acts of 1951. It administers two hospitals — North Broward General Hospital and North Bro-ward Provident Hospital. The North Bro-ward Hospital District adopted a resolution authorizing the issuance of $2,500,000 in Hospital System Revenue Bonds. North Broward Provident Hospital was expressly excluded from any benefits to be provided with the proceeds of said bonds, so we are concerned at this time only with the revenues and administration of North Broward General Hospital, which is owned by the City of Fort Lauderdale but is being administered under lease agreement with the city.
In order to make improvements on North Broward General Hospital, the District issued revenue certificates, now outstanding in the sum of $530,000. It is agreed that if the revenue bonds here sought to be issued and validated are in fact issued, the revenue certificates last referred to in the sum of $530,000 will be retired and the city will then convey North Broward Hospital to the District. The purpose of issuing the $2,500,000 in Hospital Revenue Bonds is to enable the District to acquire North Broward General Hospital and make additions, extensions and improvements thereto. This appeal is from the decree of the Circuit Court validating said bonds, despite the resistance of the state and the intervenors. There is no controversy about the facts or the procedure followed.
The first question presented is whether or not the revenue bonds sought to be validated are such as require an approving vote of the freeholders as required by Section 6, Article IX of the Constitution, F.S.A.
The answer to this question is that the resolution authorizing issue of the revenue *436 bonds, including reserves, interest, sinking fund and all other charges to service and retire them, shall be paid solely from the revenues to be derived from the operation of North Broward General Hospital. The resolution and the face of the revenue bonds further provide that the District cannot levy taxes of any nature on any real estate or personal property in the District to pay the principal or interest on the revenue bonds issued pursuant to the resolution and further that said revenue bonds shall under no circumstances constitute a lien upon any of the properties of the hospital system, or any part thereof, or other property of the District. The bonds and coupons provide in terms that they are payable solely from and secured by a lien or pledge upon the gross revenues derived from the operation of the hospital system and that said revenue bonds do not constitute an indebtedness of the District within the meaning of any constitutional, statutory or other limitation. It is expressly agreed between the holder of the bonds and coupons that such holder shall never have the right to require or compel the exercise of the taxing power of the District to pay principal or interest on said bonds.
Chapter 27438, Special Acts of 1951, in terms exempts said bonds from the requirement of. approval by the freeholders and this court has consistently held that revenue bonds of the kind in question are not bonds within the contemplation of Section 6, Article IX of the Constitution. State v. City of Winter Park, 160 Fla. 330, 34 So.2d 740; State v. City of Bartow, Fla., 48 So.2d 747, and cases cited therein.
It is next contended that the revenues of the District are not sufficient to discharge the bonds proposed to be issued and validated as they become due.
The testimony shows that appellee administers the two hospitals heretofore described, that the revenues and expenses of each are kept separate and that only North Broward General Hospital is involved in this revenue bond issue. The evidence further shows that facilities of North Broward General Hospital are entirely inadequate, that the bed capacity and other incidence of the hospital are badly in need of enlargement and betterment and that the revenues derived from administering the hospital will be ample to service the bonds, pay cost of operation and create a surplus sufficient to care for all contingencies.
It is next contended that appellee is lacking in lawful authority to issue the bonds validated by the chancellor.
Sections 4, 6 and 12 of Chapter 27438, Special Acts of 1951, answer this question contrary to the contention of appellants. As to whether or not appellee has authority to issue revenue bonds supported by gross revenues rather than net revenues, the following cases answer this question contrary to contention of appellant. Wolfe v. City of Fort Lauderdale, Fla., 47 So.2d 781; State v. City of Winter Park, supra, and Schmeller v. City of Fort Lauderdale, Fla., 38 So.2d 36.
It is last contended that the District is devoid of legal authority to issue said revenue bonds because the terms of the ratifying act as well as requirement as to appointing the commissioners of the District were not complied with.
This contention is predicated on the theory that the referendum election required was not advertised for 30 days as the ratifying act requires and that the commissioners were not appointed within 30 days as said act requires. It is true that the commissioners were not appointed for almost a year and the referendum election was advertised a few days short of the 30 day requirement but it is also true that no attack was made on the act for either of these reasons before the election, no one claimed that he was denied the right to vote, no fraud was charged or that any one *437 qualified to vote was prevented from exercising that privilege. There is accordingly no merit to this contention. Pearson v. Taylor, 159 Fla. 775, 32 So.2d 826; Town of Baldwin v. State, Fla., 40 So.2d 348; State v. City of Port St. Joe, Fla., 47 So.2d 584; State ex rel. Morgan v. O’Brien, 134 W.Va. 1, 60 S.E.2d 722. See also Langley v. South Broward Hospital District, Fla., 53 So.2d 781, and cases there cited.
The decree appealed from is therefore affirmed.
Affirmed.
THOMAS, ROBERTS and THORN-AL, JJ., concur.