113 So.2d 368 (1959)
STATE of Florida et al., Appellants,
v.
BOARD OF PUBLIC INSTRUCTION OF ESCAMBIA COUNTY, Florida, for and on behalf of SPECIAL TAX SCHOOL DISTRICT NUMBER ONE OF ESCAMBIA COUNTY, Appellee.
Supreme Court of Florida.
June 17, 1959.
*369 Edward F. Wicke and William Fisher of Fisher & Hepner, Pensacola, for appellants.
J. Edwin Holsberry, Pensacola, for appellee.
O'CONNELL, Justice.
This is an appeal from a final decree validating bonds proposed to be issued by Special Tax School District Number One of Escambia County.
The Board of Public Instruction of Escambia County, acting for the Special Tax School District, called an election on the question of the issuance of the bonds and, as provided in Sec. 97.081, F.S.A., requested the Board of County Commissioners to require a reregistration of qualified electors who were also freeholders. This was done and 15,324 such freeholders reregistered. At the election 878 such freeholders, who had not reregistered, were allowed to vote upon making affidavits in accordance with Sec. 100.241(2) (d), F.S.A., making the number of freeholders entitled to vote a total of 16,202.
At the bond election 11,173 votes were cast, 8,774 being for and 2,399 being against the issuance of the bonds. Therefore if the number of such freeholders entitled to vote was correctly determined by the reregistration and by the permitting of the 878 to vote on affidavit, as above-mentioned, a majority of the freeholder electors of the county participated in the election and a majority of such freeholders voted for the issuance of the bonds, in which case the bonds should be validated.
Escambia County, by virtue of the provisions of ch. 23903, Acts of 1947, at the time of the reregistration aforementioned had a permanent registration system with appropriate designation of the freeholder status of each voter. According to the testimony of the Supervisor of Registration, the permanent registration records of the County showed that there were 39,457 qualified electors who were also freeholders in Escambia County when the bond election was held.
It is appellants' contention that a majority of the qualified electors who were also freeholders in Escambia County did not vote to approve the issuance of the bonds as required in Sec. 6, Art. IX, Fla. Const., F.S.A. This question of necessity will be answered in determining whether or not the reregistration of freeholders had pursuant to Sec. 97.081, F.S.A. was valid.
Appellants in effect contend that inasmuch as Escambia County had a permanent registration system under the provisions of ch. 23903, Acts of 1947, the provisions of Sec. 97.081 did not apply in that County and there could be no reregistration of freeholders.
We are confronted here with reconciling conflicting enactments of the Legislature in which the latter does not expressly repeal the former.
The first Act, ch. 23903, was enacted as a general law in 1947. No attack is made on its status as a general law and we will treat it as such. It provides that in counties having a population between 100,000 and 130,000 a permanent registration system be established under which an elector, once registered, will not thereafter be required to again register.
*370 The second Act, ch. 26870, which in part now appears in F.S.A. as § 97.081, was enacted in 1951; however subsection 2 thereof was amended by ch. 31404, Laws of Florida 1956. It is clearly a general act and in Sec. 97.081 (2) (b) requires the county commissioners, when presented with a resolution of the board of public instruction so requesting, to call for a reregistration of freeholder electors so as to obtain a new and up-to-date list of such electors eligible to participate in any school bond election. This statute applies to all counties in the state; those having already adopted permanent registration systems were not excluded from its terms.
The conflict in the two acts is therefore that the former says that once an elector registers under the permanent system he will not thereafter be required to reregister, whereas the latter says that the freeholder electors may be required to reregister under the conditions outlined in the act.
The solution to this problem is found in the rules of statutory construction.
Generally the rule is that the later legislative expression governs. Overstreet v. Ty-Tan, Inc., Fla. 1950, 48 So.2d 158; Johnson v. State, 1946, 157 Fla. 685, 27 So.2d 276, certiorari denied 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683. Although the rule is against repeal by implication, this rule does not prevail where there exists a positive repugnancy between the two acts. De Coningh v. City of Daytona Beach, Fla.App. 1958, 103 So.2d 233. Here there is positive conflict between portions of the two acts since the first act provides that no elector shall be required to reregister while the later act provides that freeholder electors may be required to reregister. Taking the later statute as a modification of the first gives effect to both statutes by giving each a field of operation and leaves neither meaningless. This meets the requirements of the rules of statutory construction.
It seems to use that this construction is in keeping with the provisions of Sec. 2, Art. VI, Fla. Const., which clearly indicates that registration of electors be completed, i.e. made "from time to time." To follow appellants' reasoning to a conclusion would result in holding that a reregistration could never be held for any purpose in Escambia County.
We therefore conclude that the reregistration of the freeholder electors was valid and that the number of freeholders entitled to vote on the issuance of the bonds in question was the number of such electors who reregistered as supplemented by those permitted to vote under the provisions of Sec. 100.241(2) (d), supra. See State v. County of Sarasota, Fla. 1953, 62 So.2d 708. Inasmuch as a majority of those so qualified to vote on the issue participated in the election and a majority voted favorably, the bonds were properly validated.
It is to be noted that Sec. 98.041, F.S.A., adopted in 1951 as a part of ch. 26870, provides a permanent registration system for the counties if they chose to adopt it by resolution of the county commissioners. This section provides that after once registering under the permanent system an elector "* * * shall not thereafter be required to register or reregister except as provided by law or as provided for the registration of freeholders." However, this section does not apply until 1960 to those counties which had previously adopted permanent registration systems, such as Escambia County, and the quoted wording of the section does not apply to this case. It will, however, apply to all counties after January 1, 1960 for by Sec. 98.131 all counties are required to adopt the permanent system in the year 1960. Therefore the question presented in this case will not arise after January 1, 1960.
Appellants complain also that in enacting Sec. 97.081 the Legislature failed to comply with the mandatory provision of Sec. 2, Art. VI, Fla. Const. which requires that the Legislature "* * * shall also provide that after the completion, from time to time, of such registration, no person not *371 duly registered according to law shall be allowed to vote." This is so, say the appellants in their brief, "because the legislature did not provide that after the completion of the reregistration of freeholders no person not duly reregistered according to law shall be allowed to vote."
The question of the constitutionality of Sec. 97.081 was decided adversely to appellants in State v. County of Sarasota, 62 So.2d 708, supra, which decision upheld the validity of the act prior to its amendment in 1956. The amendment of 1956 merely added a specific provision, now Sec. 97.081(2) (b), authorizing the calling of a reregistration for an election on the issuance of bonds for financing a school building program. The decision in the Sarasota case is therefore decisive of the constitutionality of the present act since the question, i.e. the validity of an act requiring a reregistration of freeholders, was the same as in this case. Further, it was specifically decided in Holmer v. State ex rel. Stewart, 1947, 158 Fla. 397, 28 So.2d 586 that the supervisor of registration may, between the time of the closing of the registration books of freeholders and of the bond election, add to the list the names of any persons who were erroneously omitted, had qualified as freeholders after the close of the books, or for other reason had become qualified to vote, and that the supervisor should during such period strike from the list those who have in such interim period become disqualified. The effect of this decision, as implemented in part by Sec. 100.241(2) (d), is merely to extend the time for completion of the list of freeholder electors to the date of the election and is not in conflict with the constitution.
However, the Holmer decision cannot, in light of Sec. 97.081, be construed to mean that the list of freeholders qualified to vote may be made up by the supervisor of registration from any list of such electors which might have existed prior to the reregistration of such electors, or from any other source, but must be construed to mean that the list of such electors shall be comprised of those who reregister as supplemented by those who shall later qualify under the provisions of Sec. 100.241(2) (d).
We note here that the appellants do not contend that any freeholders were denied the right to vote in the election in issue.
For the reasons above expressed the decree of validation is affirmed.
TERRELL, C.J., and DREW and THORNAL, JJ., concur.
ROBERTS, J., dissents.
ROBERTS, Justice (dissenting).
Two issues, inter alia, were raised by the appellants in their appeal from the decree validating the bonds proposed to be issued by the appellee: (1) that the record showed that a majority of the qualified electors of Special Tax School District No. 1 who were, in fact, freeholders on the date of the bond election and registered as such did not participate in such bond election, so that the mandatory requirements of § 6 of Article 9 of the Florida Constitution were not complied with; and (2) that § 97.081, Fla. Stat. 1957, F.S.A. did not repeal, either expressly or by implication, the provisions of Ch. 23903, Acts of 1947, under which Escambia County had set up and was operating a permanent registration system. In my opinion, both contentions have merit.
The object sought to be attained by the people in adopting at the general election in 1930 the particular provision of § 6 of Article 9 here relied upon by the appellants has been many times stated by this court and need not be repeated here. See, for example, Clover Leaf, Inc. v. City of Jacksonville, 1941, 145 Fla. 341, 199 So. 923, 925; State v. City of Miami Beach, 1945, 156 Fla. 546, 23 So.2d 720. The 1930 amendment "in unmistakable terms places *372 restrictions on the power of municipalities [counties and districts] to incur bonded indebtedness." State v. City of Miami Beach, supra, 23 So.2d 720, 721. These restrictions are that the named political subdivisions of this state "shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; * *" § 6, Art. 9, Fla. Const. (Emphasis added.) And in Holmer v. State ex rel. Stewart, 1947, 158 Fla. 397, 28 So.2d 586, 588, in which this court was concerned, ultimately, with the same question here discussed  that is, whether a majority of the qualified elector-freeholders had participated in a bond election  it was said that the question was concluded by the provisions of § 6 of Article 9, supra, and that "[w]hen the Constitution prescribes a remedy, the Legislature may regulate the manner of its exercise, but it is powerless to revoke or change it or to place an undue burden on its exercise."
In the instant case the testimony of the Supervisor of Registration of Escambia County affirmatively shows that the number of registered qualified elector-freeholders actually entitled to vote in the bond election was far greater than the number of qualified elector-freeholders who registered in response to the notice of special registration in advance of the bond election. He estimated that the number of registered freeholders actually entitled to vote in the bond election would be close to the figure of 39,457 shown by his records prior to the re-registration, which figure was based on the "purging" of the registration list in July 1955, as required by the Escambia County permanent registration Act of 1947, supra, and his extensive activities thereafter in keeping the registration list up to date. In the light of this evidence, it is my firm conviction that to uphold the bond election in the instant case would be a clear violation of our duty under § 6 of Article 9, supra; and it necessarily follows that, as applied to the facts disclosed by this record, § 97.081 must be held to have operated, illegally, to revoke and to change the mandatory requirements of § 6 of Article 9. Holmer v. State ex rel. Stewart, supra, 28 So.2d 586. Accordingly, in my opinion, the contention of the appellants in this respect should be sustained.
I have not overlooked the decision of this court in State v. County of Sarasota, Fla. 1953, 62 So.2d 708, 712, upholding the validity of § 97.081 as "a lawful basis for determining that a majority of the freeholders of said County who were qualified electors of said county residing therein participated in said election." Reference to the court file in that case shows, however, that no contention was made that the number of qualified elector-freeholders who registered in the special registration for the bond election differed materially from the number of qualified elector-freeholders previously registered and actually entitled to vote in the election. The record does not show how many qualified elector-freeholders were registered prior to the special registration for the bond election; it is clearly indicated, however, in news stories appearing in the court file, that the number of special registrations far exceeded the number of qualified elector-freeholders registered prior thereto. Thus, the Sarasota case is not decisive of the question here squarely presented.
Moreover, it is my opinion that, under applicable statutory provisions and well-settled principles of law, § 97.081 did not have the effect of repealing the provisions of the premanent registration Act of 1947, Ch. 23903, applicable to Escambia County and under which they had established and kept up to date a permanent registration system. Applying to counties having a population according to the last state census *373 of 100,000 to 130,000, Ch. 23903 is what is euphemistically termed a "general law of local application". Its population bracket comprehended two more counties, Palm Beach and Polk; it was, however, apparently designed to operate only in Escambia County, since in the same session the other two counties also adopted permanent registration systems by other Acts  for Palm Beach County, Ch. 23741, identical to Ch. 23903, supra; and for Polk County, Ch. 23943, similar to Ch. 23903, supra. Regardless, then, of the fact that Ch. 23903 was apparently enacted as a general law, it is for all practical purposes a special law; and, generally, a special law controls over a general law to the extent of any conflict between them. State v. City of Key West, Fla. 1957, 97 So.2d 615. This general principle of law finds support in general statutory law, § 16.21, Fla. Stat. 1957, F.S.A. [first enacted in 1941 as Ch. 20719, Laws of 1941], reading as follows:
"(1) No special or local statute, or statute, local, limited or special in its nature, shall be repealed by the Florida Statutes, now or hereafter adopted, and, for the purpose of this saving from repeal any statute of the following classes shall be taken to be included in such exception, namely:
* * * * * *
"(b) Any statute for, or concerning or operative in only a portion of the state."
It is not necessary, however, to base this conclusion on general principles of law; specific provisions of the very law here involved and of which § 97.081 is a part  the Election Code of 1951, see § 97.011, Fla. Stat., F.S.A.  require the same conclusion. Thus, § 98.131, Fla. Stat., F.S.A. requires the adoption in all counties, by January 1, 1960, of the permanent registration system established by the Election Code of 1951; but § 98.141 authorizes counties which have adopted a permanent registration system "under authority of special or population acts" to adopt the permanent registration law "as the basis for their system without registration" if, in the opinion of the secretary of state, such system substantially complies with the requirements of the state permanent registration system. Then follows § 98.151, reading as follows:
"Until this system is effective in a county, registration systems existing under other general state laws either as set forth herein or effective at the time of the adoption of Ch. 26870, Laws of 1951 [the Election Code of 1951] or under population, local or special acts shall remain in full force and effect. Upon the adoption of this permanent registration system, all state laws in conflict or inconsistent with the provisions of this code shall cease to remain in full force or effect."
The record shows that at the time of the bond election here in question the board of county commissioners of Escambia County had not adopted the provisions of the Election Code of 1951 relating to registration. It follows, necessarily, that the provisions of its own permanent registration statute, Ch. 23903, Laws of 1947, remained "in full force and effect;" and it was specifically provided in Section 3 thereof that
"It shall not be necessary for any person who has once registered under the provisions of this Act to register again thereafter unless he shall change his name voluntarily, or shall change his legal residence to another election precinct, or unless the earlier registration should be cancelled for any of the reasons hereinafter prescribed for the cancellation of registrations."
The analogous provision of the Election Code of 1951, § 98.041, reads as follows:
"* * * Electors shall be registered in pursuance of this system by *374 the supervisor or by precinct registration officers, and electors registered shall not thereafter be required to register or reregister except as provided by law or as provided for the registration of freeholders." (Emphasis added.)
The italicized provision of § 98.041, supra, is in my opinion in direct conflict with the provisions of § 3 of Ch. 23903, quoted above, and thus, by the very terms of the Act itself, § 98.151, supra, was inoperative in Escambia County until the adoption by its board of county commissioners of the permanent registration law contained in the Election Code of 1951. I would therefore hold that, aside from the infirmity of the bond election referred to in the discussion of point (1) above, the reregistration was ineffective to cancel the existing registrations of qualified elector-freeholders in Special Tax School District No. 1 of Escambia County.
It might be noted, parenthetically, that many registered elector-freeholders were confused about the necessity of re-registration, as shown by newspaper items filed in this record. And this court knows what everyone knows, to wit, that many registered freeholders decline to vote in bond elections as a method of expressing their disapproval of the proposed bond issue. Thus, the purported approval of a bond issue in an election participated in by less than one-third of the freeholders actually registered and qualified to participate in such election, as shown by the testimony of the Supervisor of Registration, (although not re-registered in the special registration for the bond election) would seem to be not only legally unjustified but also contrary to equitable principles of justice and fair play.
For the reasons stated, I would reverse the decree appealed from.